HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION OF WORLD CHRISTIANITY, Appellant,

v.

CENTRAL INTELLIGENCE AGENCY and Stansfield Turner.

Nos. 79–2143, 79–2202.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1980.

Decided Dec. 23, 1980.

As Amended April 2, 1981.

Dorothy Sellers, Washington, D. C., for appellant.

Freddi Lipstein, Atty., Civ. Div., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., and Leonard Schaitman, Atty., Civ. Div., Dept. of Justice, Washington, D. C., were on the brief, for appellee.

Stanley M. Brand, Gen. Counsel to the Clerk, United States House of Representatives, Washington, D. C., with whom Steven R. Ross, Asst. Counsel to the Clerk, Washington, D. C., was on the brief, for amicus curiae, Clerk of the United States House of Representatives.

Before BAZELON, Senior Circuit Judge, and MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

In May of 1978, appellant (Unification Church) filed a request pursuant to the Freedom of Information Act (FOIA or Act), 5 U.S.C. § 552 (1976), for all Central Intelligence Agency (CIA or Agency) records relating to the Church or to its members. When the Agency failed to respond, appel-

lant filed this action for injunctive relief. Since then, the Agency has disclosed some documents in their entirety but, claiming a variety of exemptions, has withheld parts or all of others. On cross-motions for summary judgment, and after examining the documents *in camera,* the court below ruled that most of the unreleased material was exempt. The court did, however, order disclosure of at least segments of nine documents. Each party appeals from that portion of the district court's order adverse to it.[1]

The Church appeals the court's ruling that about fifty of the documents were not agency records because they were subject to congressional control and therefore were exempt under 5 U.S.C. § 551(1)(A) (1976). Of these documents, thirty-five were generated by Congress and sent to the CIA for reasons that are in dispute. The remaining fifteen originated in the Agency but were related to congressional investigations; some of these records were sent to Congress and were then returned to the CIA—again for reasons that are not entirely clear. We find that these fifty documents, even if once excluded from the FOIA as congressional records, are no longer covered by that exemption because Congress failed to express with sufficient clarity its intent to retain control over the documents. We therefore reverse the district court's holding with respect to these records and remand for consideration of other exemptions of the Act which the Agency claimed apply to these records and on which the court below had no occasion to rule.

The Church also disputes the district court's holding that the CIA could invoke FOIA exemption 3 and refuse to disclose ten documents in order to protect intelligence sources under 50 U.S.C. § 403(d)(3) (1976). Relying on this court's recent opinion in *Sims v. Central Intelligence Agency,* Nos. 79–2203 & 79–2554 (D.C.Cir. Sept. 29, 1980), we affirm the court's finding of exemption.[2]

On cross-appeal, the CIA challenges the court's order of disclosure with respect to six documents. The Agency alleges three errors: that the court did not give substantial weight to the Agency's affidavits; that the court failed to articulate reasons for its disclosure order; and that the court refused to accept the Agency's post-judgment offer of further evidence in the form of an *in camera* affidavit. We reject all arguments raised on the cross-appeal.

## I. COMMUNICATIONS BETWEEN CONGRESS AND THE CIA

### A. *Records Generated by Congress*

Thirty-five of the documents the Church seeks are, in the words of the court below, "correspondence and memoranda originated by one of four congressional committees that investigated various aspects of Korean-American relations between 1976 and 1978." Mem. op. at 3, JA at 115 (footnote omitted). These materials were, the district court found, sent to the CIA for safekeeping. Relying on this court's opinion in *Goland v. Central Intelligence Agency,* 607 F.2d 339 (D.C.Cir.1978), *vacated in part on other grounds,* 607 F.2d 367 (D.C.Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), the court below ruled that, because Congress retained control over the thirty-five documents, they were not "agency records" subject to disclosure under the FOIA.

Although *Goland* does stand for the proposition that records in an agency's possession may be congressional documents, as opposed to agency records, that case does not support the conclusion of the court below. In *Goland,* this court began by noting that "agency" as defined in the Administrative Procedure Act does not include Congress. *See* 5 U.S.C. § 551(1)(A) (1976). Finding that Congress has the authority to

---

1. The district court's opinion, Civ. No. 79–0151 (D.D.C. July 30, 1979), is reprinted in the Joint Appendix (JA) at 113.

2. The court agreed with the CIA that the other deleted portions of the documents were pro-

tected by FOIA exemptions 1, 3, and 6. Some of these documents are involved in the cross-appeal, but the Church has not challenged the district court's order that the bulk of the unreleased material is exempt.

keep its records secret, the court articulated the following test for determining the applicability of the FOIA to documents such as those requested here:

> Whether a congressionally generated document has become an agency record ... depends on whether under all the facts of the case the document has passed from the control of Congress and become property subject to the free disposition of the agency with which the document resides.

607 F.2d at 347. The court considered two factors dispositive: the circumstances attending the document's creation and the conditions under which it was transferred to the agency. Consideration of those factors led the court to hold that the document sought by plaintiffs there—a stenographic transcript of hearings held before a House committee, which had been forwarded to the CIA—was a congressional, rather than an agency, record.

■ Thus, Congress can assert its exemption from the FOIA; it can also reassert the exemption. But the exemption can be lost if there is a request for documents at a time when Congress has not designated the documents as falling within congressional control.

Comparison of the facts of *Goland* with those involved here convinces us that Congress did not indicate its intent to maintain control over the documents requested by the Church. The hearing transcript at issue in *Goland* was quite obviously meant to be secret: the congressional committee met in executive session to conduct the hearing; the stenographer and typist were sworn to secrecy; and the transcript was marked "Secret." In addition, the confidential nature of the transcript was evident—it was known to contain "discussions of basic elements of intelligence methodology, both of this country and of friendly foreign governments, as well as detailed discussions of the

CIA's structure and disposition of functions." 607 F.2d at 347 (footnote omitted).

■ In contrast, the circumstances surrounding Congress' creation of the documents requested by the Church do not demonstrate any intent that they be kept secret. The district court failed to analyze this first element of the *Goland* test, and appellees can only assert that the records were "created in the context of sensitive investigations concerning Korean-American relations." Brief for Appellee at 31. Although perhaps sensitive, not every aspect of the work of these congressional committees was confidential; in fact, the House Subcommittee on International Relations published a 1200-page report on the investigation. Appellees' general characterization thus does not suffice to prove that no part of the thirty-five documents may be disclosed.[3]

The second prong of the *Goland* test inquires whether Congress transferred the records in such a way as to manifest its intent to retain control. In *Goland*, for example, this court found that

> [t]he fact that the CIA retains the Transcript *solely for internal reference purposes* indicates that the document is in no meaningful sense the property of the CIA; the Agency is not free to dispose of the Transcript as it wills, but holds the document, as it were, as a "trustee" for Congress.

607 F.2d at 347 (emphasis supplied).

■ Here, the Agency maintains—and the district court agreed—that the CIA was given the records for safekeeping. But the record does not support that finding. The Agency affidavit discussing these documents does not specify the purpose of their transfer to the CIA. *See* Affidavit of Frederick P. Hitz, CIA Legislative Council, JA at 99.[4] Moreover, that affidavit makes

---

3. An entire document is, of course, not exempt merely because isolated portions of it may be protected from disclosure. *See Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

4. In contrast, in describing three sealed cartons of other documents transferred to the CIA from the House Committee on International Relations, the affidavit specifies that "[s]ince the cartons are merely held by CIA in security custody, the actual contents are not known to CIA." JA at 100.

clear that only some congressional documents transferred to the CIA contain classified information or details of intelligence activities. *See id.* at 100.

As evidence of Congress' intent to retain control over these records, the court below and appellees do point to a letter to the CIA from the Clerk of the House of Representatives, which objected to the release of any portion of the thirty-five documents. *See* JA at 104. But this letter was written as a result of the Church's FOIA request and this litigation—long after the actual transfer to the CIA. *See id.*; Document Disposition Index, JA at 75. We do not consider the letter sufficient evidence that Congress forwarded the documents to the Agency only "for a limited purpose and on condition of secrecy." *Goland,* 607 F.2d at 348 n.48. *Cf. Halperin v. Department of State,* 565 F.2d 699, 705 (D.C.Cir.1977) (remarks regarding national security justification for classification of press conference transcript, which were made five months after classification and eight months after press conference, did not necessarily reflect true reasons for classification).

Comparison of the circumstances surrounding the transfer to the CIA of three sealed cartons of additional congressional documents is instructive. These records, which are not at issue here, also relate to Congress' investigation into Korean-American relations. When these materials were sent to the Agency, they were accompanied by a memorandum from the House Committee on International Relations indicating that the Committee retained jurisdiction over the documents, that the documents contained classified information, and that access to the files was limited to those with authorization from the Clerk of the House. JA at 103. As a result of these instructions, the Agency has not opened the sealed cartons, does not know their contents, and maintains them for the express purpose of

safekeeping. *See* Hitz Affidavit, JA at 100. The thirty-five documents in dispute here, on the other hand, were forwarded to the CIA without any such instructions, and the Agency appears to be aware of their content.[5]

Although we hold that Congress failed to assert control over these thirty-five documents, we do not adopt appellant's position—that Congress must give contemporaneous instructions when forwarding congressional records to an agency. Nor do we direct Congress to act in a particular way in order to preserve its FOIA exemption for transferred documents. Nevertheless, both the spirit of the Act and *Goland* require some clear assertion of congressional control. Nothing here—either in the circumstances of the documents' creation or in the conditions under which they were sent to the CIA—indicates Congress' intent to retain control over the records or to preserve their secrecy.

### B. *Records Generated by the CIA*

 Also in dispute are fifteen documents created by the CIA and related to Congress' investigation of Korean-American relations.[6] Eleven of these were sent to Congress in response to a congressional inquiry and were then returned to the Agency, again without instruction. The court below read *Goland* as extending to these eleven documents and to all materials prepared by an agency specifically at the request of Congress. Mem. op. at 4, JA at 116. The court refused, however, to apply *Goland* to purely internal memoranda that are created at the initiative of the agency and are not intended for Congress, even if such documents relate to congressional investigations. *Id.* at 4–5, JA at 116–17. The court found that four of the fifteen documents were merely inter- or intra-agency memoranda that were not directly sent to Congress and therefore were not entitled to

---

**5.** We reject the Agency's assertion that the memorandum accompanying the three sealed cartons of materials was intended to apply also to the thirty-five documents at issue here. That memorandum seems specifically related to the three boxes of documents which it accompanied. *See* JA at 103.

**6.** These are Documents 47–61.

exemption as congressional documents. *Id.* at 5, JA at 117.[7]

We reverse the court's ruling that any of these fifteen records qualified as congressional records. In so doing, we do not find it necessary to decide whether *Goland,* which involved communications from Congress to an agency, applies to transfers in the other direction. That is, we do not resolve the question whether agency-created records, when sent to Congress, can lose their status as agency records and become exempt from FOIA disclosure.[8] Instead, we hold that, even if these CIA-created records were once congressional documents because generated in response to congressional inquiries and transferred to Congress, they subsequently lost their exemption as congressional records when Congress failed to retain control over them.

Again, we rely on the two-pronged *Goland* test. As with the congressional records analyzed above, there is no evidence surrounding the generation of these CIA-created records indicating that Congress intended that they remain secret. The conditions under which they were transferred back to the CIA are similarly ambiguous: they were merely returned to the Agency with no accompanying letter or instructions. Appellees again point to the *post hoc* letter from the Clerk of the House, but, for the reasons discussed above, we find that letter insufficient evidence of Congress' intent to retain control over these documents.

The Agency argues in the alternative that, if the CIA-created documents are agency records and thus within the ambit of the FOIA, various other exceptions mandate nondisclosure of all or portions of the materials: exemptions 1 and 3 of the FOIA, which protect national security information and intelligence sources and methods, 5 U.S.C. § 552(b)(1) & (3); the deliberative process privilege, included within exemp-

tion 5 of the Act, 5 U.S.C. § 552(b)(5); and constitutional protection of the legislative process under the Speech or Debate Clause, art. 1, § 6, cl. 1. Because the court below found the documents exempt as congressional records, it had no occasion to rule on these additional arguments. We therefore remand for consideration of the applicability of these exemptions.

## II. PROTECTION OF INTELLIGENCE SOURCES

The second major challenge made by the Church involves ten documents withheld by the Agency on the ground that they were covered by exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), because their disclosure would endanger intelligence sources. Exemption 3 excludes from the FOIA's coverage records specifically exempted from disclosure by statute. We have held that one such withholding statute is section 102(d)(3) of the National Security Act of 1947, 50 U.S.C. § 403(d)(3) (1976), which imposes on the Director of Central Intelligence responsibility for "protecting intelligence sources and methods from unauthorized disclosure." *See, e. g., Halperin v. Central Intelligence Agency,* 629 F.2d 144, 147 & n.7 (D.C.Cir. 1980); *Goland v. Central Intelligence Agency,* 607 F.2d 339, 349 (D.C.Cir.1978), *vacated in part on other grounds,* 607 F.2d 367 (D.C. Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

The Church disputes the CIA's definition of "intelligence source"; specifically, appellant contests the Agency's right to withhold documents under these statutes in order to protect those who have not received a pledge of confidentiality from the Agency. Those who voluntarily provide information to the CIA, or do so without a promise of confidentiality, argues the Church, are not intelligence sources within the meaning of the statute.

7. The court directed the CIA to segregate non-exempt portions of these four documents (Documents 52, 53, 56, & 57). After reviewing the supplemental materials and inspecting the documents *in camera,* the court held them protected by exemptions 1 and 3. The Church has not appealed from this ruling.

8. *Cf. Goland,* 607 F.2d at 348 n.48 (statement prepared by CIA Director and delivered before House Committee not a congressional document).

Since briefing and argument in this case, this court has addressed this issue and examined the meaning of "intelligence source" in the context of FOIA disclosure. *See Sims v. Central Intelligence Agency,* Nos. 79–2203 & 79–2554 (D.C.Cir. Sept. 29, 1980). There, we rejected the broad definition of "intelligence source" advanced by the CIA in that case, which included anyone providing information rationally related to national security. Instead, recognizing that the appropriate focus is on "the practical necessity of secrecy," the court defined "intelligence source" as follows:

> [A] person or institution that provides, has provided, or has been engaged to provide the CIA with information of a kind the Agency needs to perform its intelligence function effectively, yet could not reasonably expect to obtain without guaranteeing the confidentiality of those who provide it.

Slip op. at 20. The court thus declined to adopt either the expansive construction of "intelligence source" suggested by the Agency in *Sims* or the rigid interpretation urged upon us here by the Church.

Having applied the *Sims* definition to the documents at issue here, we find no error in the finding of the court below, which inspected the records *in camera,* that they are covered by exemption 3. The Document Disposition Index [9] submitted by the Agency specifically indicates that three of the ten documents are withheld because their disclosure would identify persons who gave information with the understanding that it would be kept in confidence.[10] Three others detail "clandestine contracts" between the Agency and the informant.[11]

The index with respect to the remaining four documents does not specifically mention confidentiality, but we are satisfied from the descriptions that the information contained in those documents is of the type that the Agency could not obtain without a guarantee of confidentiality.[12] Moreover, the Agency affidavit accompanying the Document Disposition Index indicates that all documents withheld on the basis of exemption 3 contain information from persons who willingly cooperated with the CIA on a pledge of secrecy. *See* Affidavit of Robert E. Owen, Information Review Officer for the CIA's Directorate of Operations, JA at 23–24.

We therefore affirm the holding of the court below, as specified in its order, *see* mem. op. at 6, JA at 118, that the Agency was entitled to withhold some of these ten documents in their entirety, and others in part, in carrying out its statutory duty to protect intelligence sources.

## III. THE CROSS–APPEAL

On cross-appeal, the CIA challenges the district court's ruling that portions of five documents and another entire record must be disclosed to the Church. The court rejected the Agency's assertions that this material was protected by exemptions 1, 3, and 6.[13] Although the government has turned over the segments for which an exemption 6 claim was made, it contests the court's finding that exemptions 1 and 3 are inapplicable to these documents. Specifically, the Agency maintains that the court erred in failing to give sufficient weight to the Agency's affidavits, in not providing reasons for its disclosure order, and in reject-

---

**9.** The Document Disposition Index describes the various portions of the documents for which the Agency claims exemption and the reasons for those claims, in compliance with this court's opinion in *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**10.** *See* JA at 48 (Document 12); *id.* at 52 (Document 17); *id.* at 64 (Document 31).

**11.** *See* JA at 42–43 (Document 4); *id.* at 45–46 (Document 8); *id.* at 61 (Document 27).

**12.** *See* JA at 55–56 (Document 21); *id.* at 57–58 (Document 22); *id.* at 58 (Document 23); *id.* at 70 (Document 39).

**13.** Exemption 1, 5 U.S.C. § 552(b)(1), protects classified, national security information. Exemption 3, *id.* § 552(b)(3), covering material specifically exempted by statute, prevents release of records whose disclosure would endanger intelligence sources. *See* section II *supra.* Personnel and similar files whose disclosure would constitute a clearly unwarranted invasion of personal privacy are protected by exemption 6, 5 U.S.C. § 552(b)(6).

ing the CIA's post-judgment offer of an *in camera* affidavit. We dismiss each of these arguments in turn.

### A. Deference to Agency Affidavits

The CIA alleges, first, that the court below failed to accord to the Agency's affidavits the deference required by decisions of this court. The FOIA directs trial courts to conduct de novo review of an agency's claims of exemption, while at the same time giving "substantial weight" to the agency's affidavits. *See Halperin v. Central Intelligence Agency,* 629 F.2d at 147–148 (D.C.Cir. 1980); *Hayden v. National Security Agency,* 608 F.2d 1381, 1384 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). And, in the area of national security, as is allegedly involved here, courts must be especially sensitive to an agency's expertise.

■ Nevertheless, the affidavits submitted by an agency must be specific enough to enable the judge to execute his responsibility to make a de novo determination of exemption. Such affidavits will be sufficient to justify summary judgment without *in camera* inspection when they meet the following standard:

> [T]he affidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.

*Hayden,* 608 F.2d at 1387 (footnotes omitted).

If the affidavits do not satisfy this standard, the trial judge may inspect the documents *in camera.* In deciding whether and how to conduct review *in camera,* the court has substantial discretion. *See Hayden,* 608 F.2d at 1384; *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978). In fact, in amending the FOIA in 1974 to permit *in camera* inspection, *see* 5 U.S.C. § 552(a)(4)(B), Congress indicated its intent to facilitate *in camera* inspection and to minimize judicial unwillingness to take an active role in reviewing FOIA claims. *See Allen v. Central Intelligence Agency,* 636 F.2d 1287 at 1294–1297 (D.C.Cir.1980).

■ The court below followed the appropriate procedures and standards here. Finding that the Agency's affidavits were "of a general nature," which made it "impossible to undertake meaningful review" of the CIA's "broad, often conclusory claims in the area of national security," the court determined that *in camera* review was necessary. Mem. op. at 2, JA at 114 (footnote omitted). We do not find this characterization of the affidavits and Document Disposition Index inaccurate. The descriptions of the documents are primarily conclusory and often repeat the terms of the FOIA, thereby impeding the court's efforts to rule on the claims of exemption. *See Allen,* 636 F.2d at 1292, 1294, 1298. As the court below recognized, such generality is understandable in a national security context, where a detailed affidavit may be as damaging to governmental concerns as actual disclosure of the document.

The district court thus undertook to review the documents itself. We find no abuse of discretion in this decision.

### B. Explanation of Disclosure Order

■ The second argument raised by the Agency on cross-appeal criticizes the court below for failing to articulate a justification for its order that at least segments of a few documents be disclosed to the Church. In ruling in appellant's favor, the court merely remarked that the Agency's claims of exemption had been "overly broad" with respect to some documents. Mem. op. at 6, JA at 118.

This court has previously observed that a more informative statement of rationale by trial courts facilitates the appellate inquiry in FOIA cases. *See Schwartz v. Internal Revenue Service,* 511 F.2d 1303, 1307 (D.C.

Cir.1975); *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Ackerly v. Ley*, 420 F.2d 1336, 1341–42 (D.C. Cir.1969). And this court has even remanded for a more detailed explanation from the trial court. *See Ackerly*, 420 F.2d at 1341–42; *cf. Schwartz*, 511 F.2d at 1307–08 (reversing district court's denial of motion for clarification).

Although we agree that a more complete indication of the district court's rationale would have been helpful here, we decline to reverse on this ground. The cases cited above emphasize the special importance of a statement of reasons to those requesting documents, who do not know the exact content of the records and whose efforts to argue for disclosure are therefore hampered. That need is less pressing where, as here, those seeking a fuller justification from the district court are the ones with custody over the documents and knowledge of their contents. And the CIA has not alleged here any prejudice to its efforts on appeal from the failure of the court below to say more than that inspection of the records did not corroborate the Agency's assertions of exemption.[14]

We wish to reiterate, however, that the preferable practice is a full explanation by the district court of both rulings of exemption and orders of disclosure. Here, for example, the court below should have indicated why it found the documents unprotected by the exemptions claimed.

## C. *Post-Judgment Offer of Proof*

■ Finally, the Agency argues that the court below erred in denying its Motion for Partial Relief from Judgment, which included an offer of an *in camera* affidavit explaining in greater detail the Agency's determination that the material was covered by exemptions 1 and 3. Citing *Public Citizen Health Research Group v. United States Dep't of Labor*, 591 F.2d 808 (D.C.

Cir.1978), the CIA maintains that if the court below found the Agency's affidavits insufficient, it should have accepted the post-judgment offer of additional proof. The national security ramifications of revealing the information contained in the documents may not have been apparent, notes the Agency, from inspecting the documents.

In *Public Citizen Health Research Group*, this court did reverse a trial court's refusal to examine an *in camera* affidavit that explained why disclosure of the document at issue would harm privacy interests. But there the affidavit was submitted from the outset and not, as here, after *in camera* inspection and judgment.

Even if an *in camera* affidavit would have been helpful and appropriate here, the court below did not abuse its discretion in denying the Agency's post-judgment offer of proof.[15] The interests of judicial economy and finality militate against a court's tolerating a piecemeal approach by a party. This court has accordingly directed that agencies not make new exemption claims to a district court after the judge has ruled in the other party's favor. *See Grumman Aircraft Engineering Corp. v. Renegotiation Bd.*, 482 F.2d 710, 721–22 (D.C.Cir.1973) (upholding denial of motion for rehearing), *rev'd on other grounds*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). Similarly, an agency may not wait until appeal to raise additional claims of exemption or additional rationales for the same claim. *See Ryan v. Department of Justice*, 617 F.2d 781, 792 (D.C.Cir.1980); *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 779–80 (D.C.Cir.1978) (en banc); *Vaughn v. Rosen*, 523 F.2d 1136, 1143 (D.C.Cir.1975). In *Ryan*, for example, the court warned of "[t]he danger of permitting the Government to raise its FOIA exemption claims one at a time, at different stages of a district court proceeding." 617 F.2d at 792.

---

14. The Agency did not, for example, submit a motion for clarification, as had the appellant in *Schwartz v. Internal Revenue Service*, 511 F.2d 1303 (D.C.Cir.1975).

15. This court has indicated that *in camera* affidavits, though appropriate in some cases, should be used with caution because they do not permit a response from the opposing party. *See Allen v. Central Intelligence Agency*, 636 F.2d at 1298 n.63 (D.C.Cir.1980).

Here the Agency knew that the sufficiency of its affidavits was at issue—the Church had questioned the government's claims of exemption in its motion for summary judgment. If the Agency felt that it could not give a complete explanation on the record of its reasons for asserting exemptions 1 and 3, it should have considered submitting an *in camera* affidavit at a much earlier point.

Moreover, despite the Agency's suggestion to the contrary, this is not a case in which the government's exemption arguments were not explored in depth below. The court conducted a thorough *in camera* inspection of the documents, and it had as a guide the Agency's Document Disposition Index, which explained in general terms the Agency's national security concerns and justifications for its exemption claims.[16] An *in camera* affidavit may have provided more details, but the contours of the CIA's arguments were evident in the Index. And we have detected no indication that these arguments were not understood or fully considered by the court below. We therefore find no abuse of discretion in the denial of the Agency's Motion for Partial Relief from Judgment and refusal of an *in camera* affidavit.[17]

## IV. CONCLUSION

Because we find that Congress failed to exercise its control over both the Congress-created records transferred to the CIA and the CIA-generated documents sent to Congress, we hold that neither set of materials contains congressional records immune from the FOIA under 5 U.S.C. § 551(1)(A). Congress obviously has the prerogative to act to ensure the secrecy of its records and their exemption from the FOIA. But applying the criteria first articulated by this court in *Goland v. Central Intelligence Agency*, we detect nothing in either the circumstances attending these documents' generation or the conditions under which they were transferred between Congress and the Agency that indicates that Congress intended to retain control over them. Accordingly, we reverse on this point, but remand for consideration of the Agency's other exemption claims never ruled on below.

We affirm all other portions of the district court's opinion and reject both the Church's arguments with respect to the definition of "intelligence source" and the CIA's challenges on cross-appeal to the court's disclosure order.

*Reversed and remanded.*

---

**16.** Typically, when an agency's affidavits are an insufficient basis for summary judgment, a trial court will inspect the documents *in camera or* accept *in camera* affidavits. *See Hayden v. National Security Agency*, 608 F.2d 1381, 1384 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

**17.** Moreover, the court below granted the CIA a stay of its disclosure order pending appeal, and the Agency has not been able to elaborate on the need for an *in camera* affidavit on ap-

peal. It only alleges that the court paid insufficient attention to its affidavits and failed to understand the national security implications of disclosure, speculations that are unsupported by the record.

We reject the Church's contention that the district court's imposition of a stay was an abuse of discretion. *See Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979).