**Fielding M. McGEHEE, III, Plaintiff,**

**v.**

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

Civ. A. No. 80–2997.

United States District Court, District of Columbia.

Jan. 19, 1982.

Katherine A. Meyer and David C. Vladeck, Washington, D. C., for plaintiff.

John H. E. Bayly, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

This case concerns a Freedom of Information Act (FOIA) request made by a freelance journalist for CIA documents about the People's Temple in Guyana. The CIA identified 84 documents as responsive to the request: 26 were withheld in their entirety, 18 were released with deletions, and 12 were completely released. Of the remaining 28 documents, 27 originated with the State Department and one with the FBI. The CIA claims that the plaintiff must pursue these documents from the originating agencies and that these agencies, which are not named in the complaint, will respond directly to the plaintiff. The Court now has before it defendant's motions (1) for summary judgment, (2) for partial dismissal (as to the 28 documents originating with other agencies), (3) for a protective order, and (4) to strike certain paragraphs from the affidavit of Fielding M. McGehee, and (5) plaintiff's motion for *in camera* inspection.

## BACKGROUND

In a letter dated December 6, 1978, the plaintiff wrote to the CIA requesting access to documents in the following categories:

1. The People's Temple which was founded in Indianapolis in the 1960's and which had subsequent addresses in Ukiah, Redwood Valley and San Francisco, California, and Jonestown, Guyana;

2. The Agricultural Project, or People's Temple Agricultural Project in Jonestown, Guyana;

3. Jonestown, Guyana;

4. The late Rev. James Jones, minister of The People's Temple;

5. The late Carolyn Moore Layton, who died in Jonestown on November 19, and who has been described by several newspapers as the coordinator of The People's Temple in Rev. Jones' absence;

6. Information on The People's Temple "defectors," "hit squads," and "assassination teams."

The CIA acknowledged this request, asked for a commitment to pay fees for search and copying, and noted that because the topics of the request were not "subjects of foreign intelligence interest, the likelihood of us locating any significant amount of material is remote." The plaintiff later agreed to modify his request to include only documents relating to the People's Temple.

On October 23, 1980, the plaintiff notified the defendant that he deemed the CIA's failure to act upon his FOIA request by that date a denial of his request and formally appealed that denial. This suit was filed on November 21, 1980, and on May 5, 1981, pursuant to this Court's Order of March 3, 1981, the CIA released, in whole or in part, 30 of the 84 documents that it had determined to be responsive to the plaintiff's FOIA request.

DISCUSSION

A. *Summary Judgment.*

 In any FOIA case, the Court is to "determine the matter de novo, and . . . the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). However, in matters where national security or classified records are involved, the Court must accord substantial weight to the affidavits presented by the agency. *E.g., Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *Hayden v. NSA,* 608 F.2d 1381, 1384 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Ray v. Turner,* 587 F.2d 1187, 1194 (D.C.Cir.1978). Under well established precedent in this Circuit, a court may grant summary judgment in a FOIA case if the agency affidavits "describe the documents and justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey, supra,* 656 F.2d at 738; *cf. Ray v. Turner, supra,* 587 F.2d at 1194.

In this case, the three affidavits submitted by the defendants are complete, provide reasonable detail under the circumstances, and demonstrate with reasonable precision which exemptions have been relied upon to withhold information. The plaintiff has failed to produce any persuasive evidence to contradict the affidavits, and the attempts of counsel to portray the agency's delay in this case as "bad faith," even if not rebutted by the Bacon Affidavit, are not supported by anything more than conjecture about the agency's motivation.[1] Consequently, the Court finds no need to allow the plaintiff to engage in further discovery. *See Military Audit Project v. Casey, supra,* 656 F.2d at 750–52; *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir. 1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Moreover, the Court sees no reason to exercise its discretion to require *in camera* review of these documents; and for reasons that will be

---

1. The plaintiff has submitted the affidavit of Fielding M. McGehee, III pursuant to Fed.R. Civ.P. 56(f) in an attempt to justify its discovery requests and apparently in an attempt to raise issues of material fact as to the scope of the search (¶¶ 21–22), as to the validity of the claimed exemptions (¶ 23), as to the referrals to the State Department (¶ 24), and as to the agency's good faith in encouraging him to narrow the scope of his request (¶ 5). Most of this affidavit consists of the plaintiff's unsupported speculations. For instance, paragraph 21 purports to set forth six "facts" that demonstrate the inadequacy of the CIA's search. The first "fact" has been rebutted by the Bacon Affidavit; the second is based on a misstatement of the law, the third and sixth deal with Mr. McGehee's subjective impressions of CIA actions; the fourth bases a subjective impres-

sion on Mr. McGehee's mistaken belief that the CIA had a "Fact book" on Guyana (this impression is rebutted by Exhibit "A" to Defendant's Reply Memorandum); and the fifth, even if it were admissible evidence, does not necessarily suggest that the CIA has more information than it released to plaintiff. Clearly, the plaintiff is grasping at straws. Although the defendant has moved to strike portions of the McGehee Affidavit, the Court need not rule on this motion if it does not rely on the affidavit in deciding the case. *Kansas City Power & Light Co. v. Chapman,* 12 F.R.D. 408, 409 (D.D.C. 1952). In sum, this affidavit and the bald assertions of bad faith by plaintiff's counsel are not enough to rebut the showing made by the CIA's affidavits. *See Nemo v. Allen,* 466 F.Supp. 192, 195 (S.D.N.Y.1979).

more fully developed below, summary judgment for the defendant on the issues of the scope of the search and exemptions (b)(1) and (b)(3) is appropriate.

### 1. *The Adequacy of the CIA's Search.*

■ Two aspects of the CIA's search have been questioned by the plaintiff: which files were searched and whether the CIA selected a proper date as the cut-off for the search. As to the first aspect, the defendant's original *Vaughn* affidavit claimed that "a thorough search was conducted to ensure that plaintiff's request received the fullest consideration." Affidavit of Louis J. Dube, ¶ 2. Subsequent to the October 28, 1981 hearing on this matter, the CIA filed the affidavit of John E. Bacon, which describes in detail the general process the CIA uses to search for documents requested pursuant to FOIA and in particular describes the process used in the instant case.[2]

Although the CIA's responses to FOIA requests are overseen by a single department, the Information and Privacy Division (IPD), the record system is decentralized, diverse, and compartmentalized.[3] Bacon Affidavit, ¶ 7. Each of the various components within the CIA keeps its records separately and indexes documents in a way that is most efficient in light of its own intelligence responsibilities.[4] *Id.* ¶ 4. Accordingly, a detailed description of the recordkeeping system or the indices would reveal details of the classified intelligence activities carried on by that agency. *Cf. Baez v. Department of Justice,* 647 F.2d 1328, 1336–37 (D.C.Cir.1980) (affidavits need not be so particularized as to reveal intelligence sources and defeat the purpose of FOIA exemption). The handling of FOIA requests at the CIA is unique in that the search and review must be conducted by intelligence officers with specialized knowledge and experience. Bacon Affidavit, ¶ 6. The McGehee FOIA request required no less than seven different components of the CIA to search their records.[5] Because the agency had received an earlier request which covered a broader range of similar subjects, the McGehee request was treated as a subset of the earlier request.[6]

The Bacon Affidavit adequately describes how each of the seven components of the CIA searched their files, and only two brief illustrations of the comprehensive nature of these searches need be given here. One component, NFAC/OCR, conducted three computer runs and expended 2½ hours in its search; another component spent approximately ten man-hours, conducted several

---

2. The Bacon Affidavit does not discuss the recordkeeping system in "substantive or programmatic detail" because to do so would reveal the nature of the classified activity involved. *Cf. Hayden v. NSA, supra,* 608 F.2d at 1384–85. Although the CIA has offered to submit a more detailed affidavit for *in camera* review, this is not necessary because the Bacon Affidavit is "relatively detailed" and nonconclusory. *See Goland v. CIA, supra,* 607 F.2d at 352.

3. Indeed, the need for security is such that the employees of one department do not have unlimited access to the files of other departments. Bacon Affidavit, ¶ 7.

4. For example, a department responsible for political analysis of a particular nation may organize its files under the names of politicians or parties or by geographical division while another department may use another organizational scheme. Consequently, the recordkeeping systems are not uniform among the departments. Bacon Affidavit, ¶ 4.

5. Searches were undertaken by the Directorate of Operations ("DO"), Office of Security ("OS"), National Foreign Assessment Center/Office of Central Reference ("NFAC/OCR"), Office of General Counsel ("OGC"), Office of Public Affairs ("OPA"), Executive Registry of the Office of the Director of Central Intelligence ("DCI/ER"), and Office of Legislative Counsel ("OLC"). It would be superfluous to recount the details of each search.

6. Although it might appear from the affidavits that by treating the McGehee request as a "subset" of a request with an earlier cut-off date the CIA might have failed to release documents generated after the earlier request's cut-off but before the cut-off of the McGehee request, it is clear from the documents that the McGehee search was a subset in subject matter only and not in time. The earlier request had a cut-off date of December 4, 1978, but the CIA released documents to McGehee that were generated as late as December 20, 1978. *See* DO Document # 41 (attached to Dube Affidavit).

computer runs and checked various indices by hand. *See* Bacon Affidavit, ¶¶ 19, 29. The CIA claims to have searched every system that reasonably could be expected to contain documents responsive to plaintiff's request, and the Court finds no reason to doubt this statement. *See id.* ¶¶ 19, 23, 29, 31.

Although the plaintiff has raised several objections to the search methods outlined in the Bacon Affidavit, these objections can be disposed of summarily. First, the plaintiff claims that in agreeing to narrow the scope of his FOIA request he was "unfairly misled" by the CIA. This contention is clearly without merit. Although the affidavit of Mr. McGehee does indicate that he was told that narrowing the request would expedite response to the request, he admits that he was told that searches of other files would probably not turn up any other documents anyway. Thus, it is pure speculation to say that narrowing of the request resulted in the CIA's overlooking any documents. Moreover, a letter from plaintiff's counsel to the CIA indicates that the request was narrowed at Mr. McGehee's request. See Exhibit C to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. The choice to narrow the search was the plaintiff's, and he must live with consequences of that choice.

Second, the plaintiff objects to the defendant's treating of his request as a "subset" of an earlier request for information "on Jim Jones and Peoples Temple." Plaintiff contends that this treatment of his request leads to "[t]he obvious conclusion . . . that the CIA did not process plaintiff's request by searching files on Jim Jones." Reply to Defendant's Supplemental Memorandum, at 3. To the Court this treatment would suggest quite the opposite conclusion: because plaintiff's request was a subset of a larger file on both Jim Jones and the People's Temple, any responsive documents indexed under Jim Jones would have been released to the plaintiff.

Third, the plaintiff contends that a CIA letter to another FOIA requester suggests that the CIA's response to plaintiff did not include searches for documents on Jonestown, the assassination of Leo J. Ryan, and Reverend James W. Jones. The Bacon Affidavit, ¶ 32, refutes this claim, and the Court is unable to understand how the simple statement that the CIA has received requests for information about Jonestown, the assassination of Leo J. Ryan, or other topics in any way suggests that a thorough search for documents responsive to plaintiff's request was not carried out.

■ The adequacy of an agency's search for FOIA documents is measured by a standard of reasonableness. *Founding Church of Scientology v. NSA,* 610 F.2d 824, 837 (D.C.Cir.1979); *Goland v. CIA,* 607 F.2d 339, 353 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed. 759 (1980). The Bacon Affidavit establishes that a reasonable search was undertaken here and that, in fact, this request involved a more thorough search than the agency usually accords to FOIA requests. Bacon Affidavit, ¶ 29. The only way a more thorough search could have been done would have been for the agency to search every document in its possession, and this neither the FOIA nor common sense requires. *Cf. Goland v. CIA, supra,* 607 F.2d at 353 (not requiring page-by-page search of all documents at CIA record center pursuant to FOIA request).[7]

### 2. *The Cut-Off Date.*

■ At the October 28, 1981 hearing some question was raised about the CIA's use of December 22, 1978 as the cut-off date for documents responsive to plaintiff's request. This problem was of especial concern since no documents were released until May 5, 1981. Although counsel have advanced a number of legal arguments on

---

7. The plaintiff's objections apparently stem from the fact that his request did not uncover a monumental number of documents. Yet he was warned from the inception of his request that the CIA probably did not have many docu-

ments; and indeed, the documents themselves reveal why so little information existed in CIA files. *See* DO Document # 1 (attached to Dube Affidavit).

both sides of this question, the Court is persuaded by the Bacon Affidavit's discussion of the methods generally used by the CIA and of the rationale for the December 22, 1978 date in this case that the cut-off date in this case meets the standard of reasonableness. *See Founding Church of Scientology v. NSA, supra,* 610 F.2d at 837; *Goland v. CIA, supra,* 607 F.2d at 353.

■ The CIA generally adopts one of three possible dates as the outer limit of its search for documents: the date of the request, the date the Information and Privacy Division receives the request, or the date on which a requester agrees to more clearly define or limit his request. Bacon Affidavit ¶¶ 35, 41.[8] In this case, the plaintiff agreed to narrow his request on December 27, 1978, and IPD began "tasking"[9] its various components on that date. *Id.* ¶ 41 n.*. Indeed, within three weeks of this date three of the components of the CIA, the Directorate of Operations, the Office of Security, and the National Foreign Assessment Center, had completed their searches. *Id.* ¶ 42 n.*. The problem of which the plaintiff complains arises because other components did not begin their search for documents until almost a year later, thus causing the response to the FOIA request to be delayed until May 1981.[10] This regrettable delay seems to be an inevitable product of the fragmented and compartmentalized nature of CIA recordkeeping. However, an agency is not required to reorganize its files in response to FOIA requests. *Founding Church of Scientology v. NSA, supra,* 610 F.2d at 837.

■ The Bacon Affidavit is also persuasive that the choice of some other cut-off date, such as the date of litigation, would exacerbate the delays experienced by FOIA requesters and would increase the cost of compliance. *See* Bacon Affidavit ¶¶ 41–47. Some components complete their searches early in the process, and if litigation were subsequently instituted, those components would have to conduct a second search for responsive documents that were generated after the first search.[11] *Id.* ¶ 43. Moreover, requesters who did not institute litigation would be treated differently from requesters who sued. *Id.* ¶ 41. The FOIA does not require an agency to update its response as new documents come in after an initial request was made. *Lybarger v. Cardwell,* 438 F.Supp. 1075, 1077 (D.Mass. 1977), *aff'd,* 577 F.2d 764 (1st Cir. 1978); *see Tuchinsky v. Selective Service System,* 418 F.2d 155, 158 (7th Cir. 1969). Yet that is precisely what tying the search cut-off to some date other than one of the three usually used by the CIA would do, for documents that did not exist at the time of the original request would fall within the scope of the search. The various and manifold problems that would be caused by tying the cut-off to some other date thus further demonstrates the reasonableness of the date used by the CIA in this case.

### 3. The Claimed Exemptions.

The plaintiff takes issue with the CIA's refusal to release certain documents or portions of documents because the information would reveal "intelligence sources" and is exempted from disclosure under exemptions 1 and 3 of the FOIA.[12] The CIA contends that exemption 1 applies to this information because it was properly classified under Executive Order 12,065 in that it would reveal

8. In this case, the plaintiff had the benefit of the latest of the three dates.

9. "Tasking" consists of forwarding of the FOIA request to any component of the agency that might reasonably be expected to have responsive information with instructions to search for any responsive documents. Bacon Affidavit, ¶ 5.

10. The plaintiff argues that searches should be tied to some later date, such as March 1981, when the "CIA actually processed the request."

Yet it is clear that this processing did not occur instantaneously in March 1981, but was ongoing from December 1978.

11. To have different cut-off dates for each component would be cumbersome and confusing, especially if subsequent FOIA requests were filed seeking documents on the same subject.

12. These exemptions were claimed for portions of DO documents Nos. 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 23, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, and 43.

or could reasonably be expected to reveal the identity of intelligence sources, and the agency argues that exemption 3 applies because the information constitutes "intelligence sources" within the meaning of 50 U.S.C. § 403(d)(3).[13] Taking issue with both of these claims, the plaintiff argues that the CIA has not met the requirements of Executive Order 12,065 and that the Dube affidavit is inadequate under the standards established in *Sims v. CIA*, 642 F.2d 562 (D.C.Cir.1980). Neither of the plaintiff's arguments is persuasive.

### a. *Exemption (b)(1).*

FOIA exempts from disclosure those matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The applicable Executive Order in this case is Executive Order 12,065. 43 Fed.Reg. 28,-949 (1978). Although the Dube Affidavit demonstrates that the information in question was properly classified pursuant to sections 1–301(b) & (c), 1–302 of the Order,[14] the essential question is whether withholding of the information is proper under sections 3–302 and 3–303.

■ Under section 3–302: '[w]hen information is reviewed for declassification pursuant to . . . the Freedom of Information Act, it shall be declassified unless the declassification authority established pursuant to Section 3–1 determines that the information continues to meet the classification requirements prescribed in Section 1–3 despite the passage of time." Louis J. Dube has declassification authority under the Or-

der, and his affidavit demonstrates that he made a proper decision not to declassify pursuant to 3–302. *See* Dube Affidavit, ¶ 3–4.

Originally, there was some problem in the instant case because the Dube Affidavit did not address the provisions of section 3–303, which requires in some cases that the declassification official must "determine whether the public interest in disclosure outweighs the damage to national security that might reasonably be expected from disclosure." Although the CIA contends that it need not meet the provisions of section 3–303 in this case, the question need not be resolved because the CIA has filed a Supplemental Affidavit of Louis J. Dube. This affidavit performs the balancing test of section 3–303 and concludes that declassification and release are not warranted. Consequently, defendant's argument that exemption (b)(1) applies to this material is correct, and the information need not be released.

### b. *Exemption (b)(3).*

■ This information is also exempt under (b)(3), which provides that information need not be disclosed if "specifically exempted from disclosure by statute." In this case, the relevant statute which exempts the information about intelligence sources from disclosure is 50 U.S.C. §§ 403(d)(3), 403g; and the only question is whether the Dube Affidavit adequately justifies the withholding. The plaintiff claims that the affidavit does not meet the standards set out in *Sims v. Central Intelligence Agency*, 642 F.2d 562 (D.C.Cir.1980), where the Court rejected a broad definition of intelligence source which included anyone rationally related to national security. *See Holy*

---

13. Plaintiff has conceded, as he must, that 50 U.S.C. § 403(d)(3) is a (b)(3) statute. *See Sims v. CIA*, 642 F.2d 562, 569–71 (D.C.Cir.1980).

14. The Court of Appeals for this Circuit has held that "[t]he standard that a court must follow in reviewing the agency's classification decision under Executive Order No. 12,065 . . . is whether the information fits within one of the seven enumerated categories (of § 1–301) and whether an authorized disclosure of the material reasonably could be expected to cause

the requisite potential harm." *Baez v. Department of Justice*, 647 F.2d 1328, 1334 (D.C.Cir. 1980). The Dube Affidavit demonstrates in great detail that the information in question falls under § 1–301(c): "intelligence activities, sources or methods". The Affidavit also details the potential harm from disclosure. *See* Dube Affidavit, ¶¶ 3–31. Similar showings are made for the other applicable categories of § 1–301.

*Spirit Association for the Unification of World Christianity v. Central Intelligence Agency* ["*Holy Spirit*"], 636 F.2d 838, 844 (D.C.Cir.1980) (as amended April 2, 1981). The standard as set out in *Sims* and redefined in *Holy Spirit*, focuses on "the practical necessity of secrecy." *See* 642 F.2d at 571; 636 F.2d at 844. Although, in most instances, the description of information does not specifically mention confidentiality, the Court is satisfied that the information is of the type that could not be obtained without a guarantee of confidentiality. *See Holy Spirit, supra*, 636 F.2d at 844. Moreover, the Court is satisfied that disclosure of the information could reasonably be expected "to lead to unauthorized disclosure of intelligence sources or methods." *Halperin v. CIA*, 629 F.2d 144, 147 (D.C.Cir.1980); *Phillippi v. CIA*, 546 F.2d 1009, 1015 n.14 (D.C.Cir.1976); *Liechty v. CIA*, C.A. No. 79 -2064, Mem., at 5 (D.D.C. April 16, 1981). Thus, nondisclosure of this information is justified under exemption (b)(3).

### B. The Motion for Partial Dismissal: The Documents Generated by the FBI and Department of State.

Of the 84 responsive documents in the CIA's possession, 27 were generated by the State Department and one was generated by the FBI. All but six of these documents were classified. Supplemental Dube Affidavit, ¶ 5. The CIA referred these documents to their originating agencies for response to the plaintiff. Dube Affidavit, ¶ 40. The State Department responded by releasing fourteen of the documents in their entirety, seven with deletions and by withholding six documents entirely. Only one non-classified document was not released to the plaintiff in its entirety. Supplemental Dube Affidavit, ¶ 5. Plaintiff had the right to pursue administrative and judicial appeals of the State Department's actions, but it is unclear from the record in this case whether he has done so.

■ The defendant has moved to dismiss this action as it pertains to these documents because the originating agencies are not parties before the court. Because the Court agrees that these documents are not "agency records" of the CIA and since the proper way for the plaintiff to obtain these records is to seek them from the originating agency, the motion for partial dismissal must be granted. *See British Airports Authority v. Civil Aeronautics Board*, 531 F.Supp. 408 at 416–419 (D.D.C.1982).

Although the FOIA does not explicitly state that an agency which possesses documents generated by another agency may refer those documents to the generating agency for release, this practice has been upheld by the courts. *See, e.g., British Airports Authority v. Civil Aeronautics Board, supra*, at 417; *Westinghouse Electric Corp. v. CIA*, C.A. No. 79–0822, Mem. at 7–8 (D.D.C. February 11, 1980); *Weisberg v. CIA*, C.A. No. 77–1997, Mem. at 2–3 (D.D.C. January 4, 1978), *aff'd*, No. 79–1729 (D.C.Cir. May 30, 1980) (unpublished); *Serbian Eastern Orthodox Diocese v. CIA*, C.A. No. 77–1412, Mem. at 2–3 (D.D.C. July 12, 1978); *cf. Crooker v. Department of State*, 628 F.2d 9, 10–11 (D.C.Cir.1980) (dicta). Because the agency that generated the documents is in the best position to determine expeditiously and efficiently the propriety of disclosure, a requester should pursue the documents through that agency's appeal process once referral has been made.[15]

This policy is especially important with respect to the 21 classified documents in this case. The CIA does not have "control" over these documents because it does not have authority to declassify them under Executive Order 12,065.[16] *See Westing-*

---

15. Because this court has recently discussed this issue at great length, a prolonged discussion is not necessary here. *See British Airports Authority v. Civil Aeronautics Board*, 531 F.Supp. 408 (D.D.C.1982).

16. Sections 3–301 to 303 indicate that only the classification authority which classified the information may declassify it. This is important since only the originating agency is in a position to determine whether the information has lost its sensitivity with the passage of time. Indeed, the Order makes provision for the transfer of classification authority in certain special situations. *See* § 3–201 to 204. These exceptions do not apply here, and the CIA

*house v. CIA, supra,* Mem. at 7; *cf. Holy Spirit, supra,* 636 F.2d at 841; *Goland v. CIA, supra,* 607 F.2d at 346–47 (congressional document in possession of CIA but not within its control need not be released under FOIA).

■■■ The plaintiff argues that the Court should order the CIA to join the Department of State and the FBI as parties because the CIA delayed its response to the FOIA request. This course of action is not appropriate because this case is ripe for resolution while any action against the other agencies would be in its incipient stages. Moreover, it is unclear from the record whether the plaintiff has exhausted the administrative appeal process of those two agencies. Consequently, defendant's motion for partial dismissal must be granted because the Court does not have jurisdiction over the documents generated by the State Department and the FBI.

## CONCLUSION

While it might be unfortunate that the CIA took so long in responding to plaintiff's request, nothing demonstrates that the defendant has acted in bad faith in this matter. A thorough search was conducted, certain documents were released, while others were validly withheld under exemptions to the FOIA or were referred to the agency which controlled them. Although the plaintiff did not receive much information pursuant to his request, it is apparent that he was not entitled to much under FOIA.

could not validly declassify documents transferred to it without being subject to administra-

tive sanctions. *See* Executive Order No. 12,-065, § 5–502.