**HOLY SPIRIT ASSOCIATION FOR the UNIFICATION OF WORLD CHRISTIANITY, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, et al., Defendants.**

**Civ. A. No. 79–151.**

United States District Court, District of Columbia.

Jan. 12, 1983.

Warren K. Kaplan, Jack L. Wuerker, Dorothy Sellers, Washington, D.C., for plaintiff.

David M. Glass, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This Freedom of Information Act (FOIA) case is before the Court on cross-motions for summary judgment following remand by Amended Judgment of the United States Court of Appeals dated July 19, 1982,

*Holy Spirit Assoc. for the Unification of World Christianity v. CIA,* 636 F.2d 838 (D.C.Cir.1980), 455 U.S. 997, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982). It concerns communications between the CIA and congressional committees investigating "Koreagate," a matter involving possible threats to national security.[1]

After examining some of the documents this Court originally ruled that a congressional exemption should be granted. The congressional committees had deposited certain congressional files pertaining to the investigation in the CIA's custody under seal and it appeared there was a similar intent to protect the apparently duplicate material, in the possession of the CIA but not under seal, which is at issue in this case. However, the Court of Appeals ruled that absent a more positive indication that Congress intended to retain custody of the duplicates the congressional exemption would not be allowed and remanded to the District Court for consideration of the applicability of other exemptions. Further exemptions have now been claimed by CIA and further public affidavits and briefs have been filed. The Court has also had the benefit of *in camera* affidavits and has carefully read *in camera* each of the 39 documents still withheld in order better to understand the issues.[2]

▮ Plaintiff objects to any consideration of FOIA exemptions not originally claimed. This objection is denied. While the remand is unclear as to whether new exemption issues could be raised, the inter-

1. The Koreagate investigations focused on allegations of attempts by the Government of Korea to influence the conduct of Members of Congress and other United States officials. A more complete summary of prior events in this case is found in a Statement of Facts accompanying the defendants' motion for summary judgment filed November 15, 1982.

2. The 39 records are listed as documents numbered 47–51, 54–55 and 58–61 in the Document Disposition Index attached to the Affidavit of Robert E. Owen executed May 8, 1979 (the "First Owen Aff."), and as documents numbered 4, 8–12 and 14–35 in the Index attached to the Supplemental Affidavit of Louis J. Dube (the "First Dube Aff."). The same 39 records

are listed as documents numbered 4, 8–12, 14–35, 47–51, 54–55 and 58–61 in the Document Disposition Index made part of the CIA's *in camera* affidavit submitted therewith.

After receiving the *in camera* affidavit the Court inspected the documents *in camera* on two occasions, on November 16, 1982, and January 6, 1983. The Court also met with a representative of and counsel for the Agency on those dates and on December 20, 1982, solely to ensure that the documents were properly numbered and identified in the *in camera* affidavit and that the affidavits described all the documents still at issue. No information going to the merits was furnished on any occasion.

ests of national security demand it and the Agency should not be penalized by the appellate rejection of a claim in this uncertain FOIA area. *Jordan v. United States Department of Justice,* 591 F.2d 753, 780 (D.C. Cir.1978); *Carson v. United States Department of Justice,* 631 F.2d 1008, 1015 n. 29 (D.C.Cir.1980).

The communications at issue were almost entirely based on classified material. Since the communications were with committees themselves highly conscious of security considerations the Agency mistakenly considered its contacts and deliberations with the committees were fully immune from disclosure. Accordingly, the communications themselves were not originally classified by the CIA and, of course, congressional letters based on classified data could not be classified by Congress. Invoking its statutory authority under the National Security Act of 1947, 50 U.S.C. § 403(d)(3), and Executive Order No. 12356, 47 Fed.Reg. 14874 (1982), the Agency has now classified much of the material withheld. It has done this in good faith to protect methods, sources and the release of information which when read even by one as inexperienced in such matters as the Court demand withholding.

All claims of exemption[3] under exemptions 1, 3 and 6 are sustained for reasons stated in the *in camera* affidavit. The Court also finds that the *Vaughn v. Rosen* affidavits are as explicit and detailed as the circumstances outlined in the *in camera* affidavits and the text of the disputed papers permit.

Much of the material is also claimed to be exempt under exemption 5. To the extent this claim overlaps material properly claimed to be covered by exemptions 1, 3 and 6 that claim need not be and has not been reviewed. There remain 19 documents, however, which are withheld in whole or in part in reliance solely upon exemption 5.

Two present no difficulty in applying exemption 5. No. 55 is an internal CIA deliberative document partially covered by other appropriate exemptions. No. 61 consists primarily of an internal CIA memorandum prepared for the Deputy Director to aid his briefing of a congressional committee which contains information otherwise exempt, except for attachments. One attachment is No. 4 which for reasons indicated later must be released. Other attachments have been released.

Twelve documents[4] consist of communications to the CIA from the House Select Committee on Intelligence, the House International Relations Committee or the House Standards of Official Conduct Committee. These documents request information from the CIA relating to the congressional inquiries or seek advice concerning the content of proposed committee reports. In some instances portions have been excised where necessary to protect sources or methods of the Agency and withholding has been approved under other exemptions as previously indicated.

The five remaining documents[5] are purely internal congressional working papers which somehow reached CIA agency files. These reflect the internal workings of Congress. Some few portions have also been withheld under other appropriate exemption claims as previously discussed.

**3.** The supplemental public affidavit filed September 15, 1982, indicates by use of an asterisk when a specific exemption claimed might be considered to apply not only to a particular portion of a document but to the document in its entirety. For example, document 18 is marked so that exemption 5 appears to be claimed to apply to the entire document. The Court directed the CIA to submit the documents *in camera* with notations in the margin of each, describing the precise exemption considered applicable to each precise portion or paragraph. This was done and the Court relied solely on the detailed exemption claims marked in the margins of the documents and has entirely ignored any exemption claimed on the basis of the asterisk in the public affidavit.

**4.** Nos. 11, 12, 18, 23, 24, 25, 26, 30, 32, 33, 35 and 54.

**5.** Nos. 4, 8, 22, 31 and 34.

■ The 17 documents mentioned in the two previous paragraphs are not exempt under exemption 5. They reflect the deliberations of Congress, not the Agency, and Congress is not an agency under FOIA.

It appears from the remand, although not with certainty, that this Court was directed to consider the constitutional protection of the legislative process under the Speech and Debate Clause, Art. 1, Sec. 6, Cl. 1, at least as to some of the documents. 636 F.2d at 843. The Clerk of the House of Representatives made certain representations in this regard by letter to the CIA dated April 24, 1979, which is attached to this Memorandum, and has filed a memorandum in these remand proceedings as *amicus*. The parties have briefed the Speech and Debate Clause issue[6] which the Court now considers as it relates to the 17 documents covered in whole or in part only by a claim for exemption under 5.

These documents are in the custody of the CIA. The Court of Appeals found that there was insufficient proof that Congress intended to maintain control of them. Thus the issue is posed whether the CIA, which communicated with committees of the House on legislative matters clearly comprehended within the Speech and Debate Clause, may, at the request of the Clerk of the House of Representatives, assert that constitutional protection to prevent release of the communications where a member of the general public seeks through FOIA to subject that legislative process to examination.

■ The Speech and Debate Clause was designed to preserve legislative independence. There can be no dispute that while Congress is performing legislative acts its "deliberative and communicative" functions are protected as a matter of constitutional certainty from any intrusive action by the Executive or Judicial branches.

The CIA supplied certain information to the legislative investigations and was consulted by Congress in furthering strictly legislative objectives. A careful reading of the documents discloses not the slightest suggestion of impropriety on the part of Congress or the Agency. The legislative process was naturally concerned with protecting national security and both the Congress and the Agency scrupulously functioned within the constraints of this overriding consideration, which this FOIA plaintiff seeks to breach.

■ Release of the documents at issue here, which the Clerk after examining the documents seeks to protect, would appear to constitute a threat to legislative independence and would create a precedent that would impair the "deliberative and communicative" function of the legislative process. It is not necessary to reach this issue, however, because the considerations noted above are in any event not enough to permit the Court to withhold the documents under the Clause. No member of Congress or appropriate representative has come forward as a party to raise the issue. The Clerk appears merely as *amicus* and his representations are general, posing no concrete case or controversy. If the House of Representatives desires to protect this type of material it must act affirmatively, either by resolution in particular cases such as this, by decisive timely action asserting custody, or by appropriate amendment to FOIA.

Accordingly summary judgment is granted in favor of plaintiff but only insofar as it relates to those portions of documents numbered 4, 8, 11, 12, 18, 22, 23, 24, 25, 26, 30, 31, 32, 33, 34, 35 and 54 claimed to be exempt only under exemption 5. In all other respects the plaintiff's motion for summary judgment is denied and the motion for summary judgment of the defendants is granted.

**6.** The CIA, in its reply memorandum filed December 23, 1982, argues that the Speech and Debate Clause does not apply to the documents at issue because the Clause is not a "withholding statute" under 5 U.S.C. § 552(b)(3).

Defendant's Exhibit "G"

Edmund L. Henshaw, Jr.    W. Raymond Collen
Clerk    Deputy Clerk

Office of the Clerk

**U. S. House of Representatives**

Washington, D.C.   20515

**April 24, 1979**

Honorable Stansfield Turner
Director
Central Intelligency Agency
Washington, D.C. 20505

Dear Mr. Director:

This is in reference to *Holy Spirit Association for the Unification of World Christianity v. CIA,* C.A. No. 79–0151, a civil suit currently pending before the United States District Court for the District of Columbia.

The Rules of the House of Representatives vest in the Clerk of the House the responsibility for the maintenance of House records and documents.  It would be inconsistent with the rules and procedures of the House of Representatives for the defendant executive agency to release that portion of the requested material which is comprised of material constituting documents of the United States House of Representatives including agency prepared documents reflecting or incorporating specific congressional investigative or oversight requests; therefore, as the elected officer of the body charged with responsibility in this area, I formally object to any such release.  Furthermore, if the court before which this matter is pending contemplates the issuance of an order requiring the production of these documents the congressional entities involved wish to reserve their right to address the court on this matter through their appropriate legal representatives.

Sincerely,
/s/   Edmund L. Henshaw, Jr.
EDMUND L. HENSHAW, JR., Clerk
U.S. House of Representatives

Attachment to Court's Memorandum dated January 12, 1983.