Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 18, 2003          Decided March 5, 2004

No. 02-5266

UNITED WE STAND AMERICA, INC., ET AL.,
APPELLANTS

v.

INTERNAL REVENUE SERVICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 01cv0735)

*Larry E. Klayman* argued the cause and filed the briefs for appellants.

*Michael J. Haungs*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Roscoe C. Howard Jr.*, U.S. Attorney, and *Jonathan S. Cohen*, Attorney, U.S. Department of Justice.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE, HENDERSON, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Dissenting Opinion filed by *Circuit Judge* HENDERSON.

TATEL, *Circuit Judge*: The Freedom of Information Act does not cover congressional documents. This case involves a FOIA request for a document that the Internal Revenue Service prepared at the direction of a congressional committee. In this circuit, whether the IRS response is subject to FOIA turns on whether Congress manifested a clear intent to control the document. Applying that standard to the circumstances of this case and balancing Congress's authority to maintain the confidentiality of its own materials against the broad mandate of disclosure lying at the heart of FOIA, we conclude that only those portions of the IRS response that would reveal the congressional request are not subject to FOIA.

## I.

Intended to "ensure an informed citizenry, vital to the functioning of a democratic society," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), the Freedom of Information Act requires federal agencies to make agency records available to the public upon reasonable request. 5 U.S.C. § 552(a)(3)(A) (2000 & Supp. II 2002). Because Congress is not an agency, congressional documents are not subject to FOIA's disclosure requirement. *See id.* §§ 551(1), 552(f) (2000).

This case concerns a document the Internal Revenue Service created in response to a request from the Joint Committee on Taxation. Established by statute, *see* 26 U.S.C. § 8001 (2000), the Joint Committee consists of ten members, five each from the Senate Finance Committee and the House Ways and Means Committee. *See id.* § 8002(a) (2000). By letter dated March 1997, the chairman, vice-chairman, and ranking members of the Joint Committee directed committee staff "to investigate whether the IRS's selection of tax-exempt organizations . . . for audit has been politically moti-

vated, including an analysis of the selection of such tax-exempt organizations for audit for reasons related to their alleged political or lobbying activities." Paull Decl. ¶ 7. As part of that investigation, the Joint Committee's chief of staff sent the IRS a letter dated April 28, 1997, requesting specified categories of documents and information. The letter concluded: "This document is a Congressional record and is entrusted to the Internal Revenue Service for your use only. This document may not be disclosed without the prior approval of the Joint Committee." *Id.* ¶ 8.

In response, the IRS prepared and sent to the Joint Committee a seventeen-page letter with three attachments. The IRS retained a copy in its files. The letter provides status reports on case files and summarizes IRS procedures for investigating employees, recusing IRS workers, and processing congressional requests. *See* Miller Decl. ¶ 4. The three attachments consist of (1) a twelve-page list of certain organizations and the names of IRS employees involved in cases concerning those organizations, (2) a four-page description of cases involving allegations of inappropriate behavior by IRS agents, and (3) a one-page list of certain cases together with an estimate of the volume of documents in each case. *See id.* ¶ 5.

Some three years later, appellant United We Stand America, Inc., a political organization started by Ross Perot, submitted a FOIA request to the IRS seeking disclosure "of any and all documents . . . that refer or relate in any way" to the organization. When the IRS failed to respond, United We Stand America filed suit in the U.S. District Court for the District of Columbia to compel production of the requested documents. Although the IRS eventually produced over five hundred pages of documents, the agency refused to disclose the response sent to the Joint Committee, claiming that it qualified as a congressional document not subject to FOIA. Relying on that argument, the IRS moved for summary judgment. In a supporting declaration, the IRS employee who authored the response described the requested documents and explained that "the IRS had not used these records for any purpose other than . . . to respond to the

Joint Committee's April 28, 1997 request," and that they were kept in a Joint Committee correspondence file "separate from the office's ordinary files." *See id.* ¶¶ 4–8. In another declaration, the Joint Committee's chief of staff explained the committee's need for confidential communications with the IRS and stated that because the IRS "reiterate[d]" and "responded" to each of the points in the Joint Committee request, "[d]isclosure of [the response] would effectively disclose the substance of [the request] to which it responded." Paull Decl. ¶ 11. In arguing that its response was not subject to FOIA, the IRS advised the district court that "[s]hould the Court determine that the documents in question constitute agency records for purposes of the FOIA . . . , the defendant reserves the right, pursuant to the statute, to assert any applicable exemption claim(s), prior to disclosure, and to litigate further any such exemption claims." Def.'s Mem. of P. & A. in Supp. of Its Mot. for Summ. J. at 12 n.22.

The district court granted summary judgment for the IRS, holding that the response qualified as a congressional document because Congress, not the IRS, exercised control over it. *United We Stand Am., Inc. v. IRS*, 219 F. Supp. 2d 14, 15 (D.D.C. 2002). The court explained: "[w]hile the IRS created the documents, it intended at all times to relinquish control over them, . . . is not free to use or dispose of them as it sees fit because the JCT maintains control over them, . . . did not use the records for any of its regular agency functions, and . . . kept the documents for internal reference purposes only." *Id.* at 17.

United We Stand America appeals. Our review is de novo. *E.g., Computer Prof'ls for Social Responsibility v. U. S. Secret Serv.*, 72 F.3d 897, 902 (D.C. Cir. 1996).

## II.

In *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 144–46 (1989), the Supreme Court held that documents qualify as "agency records" subject to FOIA disclosure if they are (1) created or obtained by an agency, and (2) in the agency's control. In this case, it is uncontested that

the IRS created the documents and retains a copy of them. Thus, resolution of this dispute turns on whether the IRS has control of the documents. "By control," the Supreme Court explained in *Tax Analysts*, "we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.* at 145.

Relying on *Tax Analysts*, United We Stand America argues that the requested documents are agency records because the IRS created them using agency resources in the course of its official conduct. Although we have no doubt that IRS communications with the Joint Committee constitute legitimate conduct of the IRS's official duties, *see, e.g.,* 26 U.S.C. § 8023(b) (2000), this case is not so simple. For one thing, the connection between Congress and the requested records implicates considerations not at issue in *Tax Analysts*, where a non-profit organization sought disclosure of judicial opinions possessed by the Department of Justice. As the IRS points out, moreover, this circuit has employed a four-factor analysis to determine whether an agency exercises sufficient control over requested documents to render them agency records:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (quoting *Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd on other grounds*, 492 U.S. 136 (1989)) (internal quotation marks omitted).

Until now we have had no occasion to consider the applicability of the four-factor analysis in the congressional context. Prior to adopting the four-factor analysis, however, we issued three decisions that considered where to draw the line between congressional documents and agency records. In the

first of these cases, *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), *vacated in part on other grounds*, 607 F.2d 367 (D.C. Cir. 1979) (per curiam), the FOIA requester sought disclosure of the CIA's copy of a congressional hearing transcript marked "secret." The FOIA requester argued that the transcript was an agency record subject to FOIA disclosure because the CIA had possession of it. Rejecting that argument, we relied on policy considerations unique to the congressional context. In addition to emphasizing Congress's right to keep its own materials confidential, we explained that "Congress exercises oversight authority over the various federal agencies, and thus has an undoubted interest in exchanging documents with those agencies to facilitate their proper functioning in accordance with Congress' originating intent." *Id.* at 346. Holding otherwise, we reasoned, would force Congress "either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role." *Id.* Because "on all of the facts of the case Congress' intent to retain control of the document [wa]s clear," we ruled that the transcript was a congressional document rather than an agency record. *Id.* at 348.

To be sure, the record at issue here, unlike the transcript in *Goland,* was created by the agency, not by Congress. In *Goland*, however, we referred to the "exchang[e]" of documents—precisely what happened here—and in a later case, *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 842–43 (D.C. Cir. 1980), *vacated in part on other grounds*, 455 U.S. 997 (1982), we recognized the possibility that agency-created documents could in fact become congressional records. In *Holy Spirit*, the FOIA requester sought disclosure of documents that had been created by the CIA, sent to Congress, and then returned to the CIA with no indication that the agency should keep them confidential. Finding the documents to be agency records, we explained that "even if these [requested] CIA-created records were once congressional documents because [they were] generated in response to congressional inquiries and transferred to Congress, they subsequently lost their exemption as congressional records when Congress failed to retain control

over them." *Id.* at 843. Thus, although we rested our decision on the absence of evidence of congressional intent to "retain control" over agency-generated documents, by focusing only on Congress's return of the records to the agency we found it unnecessary "to decide whether *Goland*, which involved communications from Congress to an agency, applies to transfers in the other direction." *Id.*

We took the next step in *Paisley v. CIA*, 712 F.2d 686, 695–96 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984) (per curiam), applying the legal standard set out in *Goland* to records created by an agency in connection with a congressional investigation. In that case, the FOIA requester sought a number of documents, including "requests for information made by the [congressional investigatory committee] and the CIA's responses to those requests." *Id.* at 690. The CIA argued that none of the agency-created documents qualified as agency records "because they were generated in direct response to the" congressional investigation. *Id.* at 695. In considering that argument, we sought to "safeguard Congress' long recognized prerogative to maintain the confidentiality of its own records as well as its vital function as overseer of the Executive Branch." *Id.* at 693 n.30. To accomplish this, we focused our inquiry on "Congress' intent to control (and not on the agency's)," *id.*, and concluded that Congress had failed to manifest an intent to control the requested records. *Id.* at 695–96. Although careful "not to imply that agency-created documents can never become congressional, whether by eventual transfer to Congress or by some other means," *id.* at 695 n.41, we held that "in the absence of some stronger indicia of congressional intent," the mere fact that the agency-created records were related to a confidential congressional investigation was "far too insubstantial and commonplace to establish congressional control within the meaning of *Goland*," *id.* at 696.

Although *Goland*, *Holy Spirit*, and *Paisley* all predate our four-factor analysis, their focus on congressional control—particularly *Paisley*'s, which, like this case, dealt with agency-created documents—reflects the considerations that underlie

the second factor: the agency's ability to use or dispose of the record as it sees fit. Emphasizing that Congress's intent to control and the agency's ability to control "fit together in standing for the general proposition that the agency to whom the FOIA request is directed must have exclusive control of the disputed documents," *Paisley* explained that "[i]f, under the *Goland* standard, Congress has manifested its own intent to retain control, then the agency—by definition—cannot lawfully 'control' the documents." *Id.* at 693 (footnote omitted). That principle, however, applies differently here than it did in *Paisley*. In *Paisley* we found insufficient "indicia of congressional intent" to control the agency-created documents. *Id.* at 696. Here, under all of the circumstances surrounding the IRS's creation and possession of the documents, we find sufficient indicia of congressional intent to control, but only with respect to the Joint Committee's April 28 request and those portions of the IRS response that would reveal that request.

We begin with the limited scope of the confidentiality directive contained in the Joint Committee's April 28 letter. The letter states: "This document is a Congressional record and is entrusted to the Internal Revenue Service for your use only. This document may not be disclosed without the prior approval of the Joint Committee." Paull Decl. ¶ 8. Although the letter twice refers to "this document" and although it never refers to the IRS response, the IRS insists that when the Joint Committee used the word "this" it meant to include not just the request itself, but the response as well. In support, the IRS calls our attention to the statement in the Joint Committee declaration that the April 28 letter's confidentiality language "is used by the JCT to reflect its intent that the document in question remain under the control of the JCT and not be subject to the 'free disposition' of the IRS." *Id.* ¶ 8 (citing *Goland*, 607 F.2d at 346–47). But for essentially the same reason that courts do not allow unambiguous statutory language to be revised through legislative history, *see Burlington N. R.R. Co. v. Okla. Tax Comm'n*, 481 U.S. 454, 461 (1987), we cannot accept such a revisionist reading of the April 28 letter. Referring to "this document," the letter

could not be clearer. If the Joint Committee intended to keep confidential not just "this document" but also the IRS response, it could have done so by referring to "this document and all IRS documents created in response to it."

The IRS nevertheless argues that its response cannot be disclosed because doing so would reveal the Joint Committee request, thus breaching the committee's directive that "[t]his document may not be disclosed without prior approval of the Joint Committee." In support, the IRS relies on the declaration's statement that "[d]isclosure of the [response] would effectively disclose the substance of [the request] to which it responded." Paull Decl. ¶ 11. Perhaps so, but the declaration nowhere states that the IRS would be unable to preserve the confidentiality of the Joint Committee request by releasing a redacted version of the response. *Cf. Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice*, 742 F.2d 1484, 1496 (D.C. Cir. 1984) (stating that the inclusion of personal information in requested documents does not remove them from the definition of agency records where the "personal information can be redacted from the copies of the documents disclosed to a FOIA requestor"). In other words, the Joint Committee's April 28 request and the declaration justify withholding as congressional materials solely those portions of the seventeen-page letter and the three separate attachments that would disclose the request.

The IRS insists that other evidence reveals the Joint Committee's intent to control the *entire* IRS response. First, it argues that the Joint Committee relied on provisions of the Internal Revenue Manual that recognize the confidentiality of Joint Committee communications with the IRS. *See* Internal Revenue Manual, Disclosure of Official Information Handbook, Joint Committee on Taxation Records of Contact, sec. 1.3.13.5.3 (1998) (Manual), *reprinted in* Appellee's Br. at Appx. 9a–10a. In her declaration, however, the Joint Committee's chief of staff made quite clear that she understood the IRS Manual to protect the confidentiality of only the Joint Committee request: "The IRS Manual recognizes that documents generated in response to JCT requests must not be disclosed *to the extent* that they reveal the existence or

substance of a JCT request." Paull Decl. ¶ 12 (emphasis added). The chief of staff's understanding finds support in the Manual excerpts attached to the IRS's brief. *See* Manual sec. 1.3.13.5.3 (prohibiting disclosure of Joint Committee requests but directing IRS personnel to determine whether documents furnished to the committee may be released or withheld on their own merit without identifying the Joint Committee request).

Second, the IRS argues that the Joint Committee, relying on its consistent course of dealing with the IRS, expected that communications between it and the agency would remain confidential. We agree with United We Stand America, however, that such an understanding is far too general to remove the IRS response from FOIA's disclosure requirement. Skeptical of such pre-existing agreements, we have required a more specific showing of congressional intent to control documents sought by FOIA requesters. *See Paisley*, 712 F.2d at 695 (rejecting letters offered to prove such an agreement as "too general and sweeping to provide . . . the requisite express indication of a congressional intent to maintain exclusive control over [the] particular records [at issue]"). Although we understand that the Joint Committee believes that confidentiality is critical to its work, and although we have no doubt that the committee has a practice of retaining control over its communications with the IRS, nothing in the record here ties that general understanding and practice to those portions of the IRS response that would not reveal the Joint Committee request.

Finally, the IRS argues that the Joint Committee's continued objection to disclosure demonstrates its intent to control. In *Holy Spirit*, however, we held that a congressional letter objecting to the release of requested records was insufficient to evince congressional intent to control because it was written not only long after the requested record's creation, but also in response to the FOIA litigation. *See* 636 F.2d at 842. In *Paisley*, we similarly discounted correspondence written long after the original creation and transfer of the requested documents as insufficient to evidence congressional intent to control, emphasizing the absence of "*contemporaneous* and

*specific* instructions from [Congress] to the agencies limiting either the use or disclosure of the documents." 712 F.2d at 694. As in those cases, the Joint Committee's post-hoc objections to disclosure cannot manifest the clear assertion of congressional control that our case law requires.

For all of these reasons, we conclude that the Joint Committee's directive and expectation of confidentiality extend only to its April 28 request and to those portions of the IRS response that would effectively disclose that request. Put in terms of *Burka*'s second factor, the IRS retains the "ability to use and dispose of" any portions of its response that would not reveal the Joint Committee's request.

Citing the remaining factors, the IRS insists that whatever *Congress* may have intended, it (the IRS) has no control over the response because it created the document only to respond to Congress, used it for no other purpose, and keeps it in a separate file. *See also* Dissent at 2–4. In the circumstances of this case, however, where the IRS created and maintains the document in the course of its official duties, i.e., responding to a congressional request for information, such considerations cannot be applied to remove the entire IRS response from the definition of agency records, for doing so would conflict with the Supreme Court's *Tax Analysts* definition of agency control: "[b]y control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties." 492 U.S. at 145. Indeed, cases decided both before and after *Tax Analysts* that employed the four-factor analysis to determine agency control did not involve documents that were created and possessed by the agency "in the legitimate conduct of its official duties." *Tax Analysts* itself involved documents that were not created by the agency. 845 F.2d at 1069 (court opinions held by agency). *Burka* involved documents that were not in the agency's possession. 87 F.3d at 515 (data tapes held by private contractor). *Kissinger v. Reporters Committee for Freedom of the Press* involved telephone notes that Secretary Kissinger had generated while he was National Security Adviser and that were kept in a personal file in his State Department office. 445 U.S. 136, 157 (1980). And like *Kissinger*, *Gallant*

*v. NLRB*, cited by the dissent, involved personal documents located within an agency, not official agency documents. 26 F.3d 168, 172 (D.C. Cir. 1994) (personal letters written by a Board member attempting to secure reappointment). In contrast to these cases, the IRS created and retains the response in the course of its official obligation to communicate with the Joint Committee.

Under these circumstances, absent "clear" (*Goland*'s word) expression of congressional intent to control the entire response, neither the IRS's own expectations nor its handling of the document can turn the entire agency-created record into a congressional document. Otherwise, documents that agencies create in response to congressional requests could become congressional documents even if Congress expressed no intent to keep them secret, for it can be said of most such materials that they would not have been created but for the congressional request, that the agency relies on them for no other purpose, and that they are kept in separate files, i.e., in the agency's office of congressional affairs. Such a result would "exempt from FOIA's purview a broad array of materials otherwise clearly categorizable as agency records, thereby undermining the spirit of broad disclosure that animates the Act." *Paisley*, 712 F.2d at 696 (footnote omitted).

We conclude with a few reactions to the dissent. First, we have not, as the dissent implies, changed the focus from agency control to congressional intent. *Paisley* accomplished that task: "[i]f, under the *Goland* standard, Congress has manifested its own intent to retain control, then the agency—by definition—cannot lawfully 'control' the documents." 712 F.2d at 693. Applying *Paisley*, we have concluded that only those portions of the response that would reveal the Joint Committee request are congressional documents not subject to FOIA. As to the remaining *Burka* factors, we have not "reject[ed]" them but rather explained that they have no applicability where, as here, the agency creates and possesses the document in the legitimate conduct of its official duties. *See supra* at 11–12.

Second, the dissent argues that we have created a tenth exemption to FOIA. *See* Dissent at 5–6. Congressional documents, however, are not subject to FOIA at all and, for the same reason, neither are the portions of the response that would reveal the Joint Committee request. Whether one of the nine exemptions applies to those portions of the response that might not reveal the Joint Committee request is a question for the district court to resolve on remand.

Third, the dissent argues that documents cannot be "part-congressional records and part-agency records" because (1) redaction is only permissible pursuant to one of FOIA's nine exemptions, and (2) *Goland, Holy Spirit*, and *Paisley* did not subdivide the documents at issue in those cases. *See* Dissent at 4–6. As to the first point, although it is true that documents *meeting the definition of agency records* can only be withheld under FOIA if they fall within one of the nine exemptions, nothing in the Supreme Court's *Tax Analysts* decision, on which the dissent relies, precludes redaction of congressionally controlled information from documents that would otherwise meet the definition of agency records. *Tax Analysts* does explain that the nine exemptions are exclusive, but the Court did not address that issue until after deciding that the documents in that case were in fact agency records. It is that threshold question—whether the IRS response qualifies as an agency record—that this case presents.

Moreover, the dissent's position conflicts with *Bureau of National Affairs*, which held that the inclusion of personal information in requested documents does not remove them from the definition of agency records where "personal information can be redacted from the copies of documents disclosed to a FOIA requestor." 742 F.2d at 1496. Here, too, the inclusion of material that Congress directed be kept confidential does not remove the entire IRS response from the definition of agency records where the congressional material "can be redacted from the copies of documents disclosed to the FOIA requestor." Contrary to the dissent, *see* Dissent at 5 n.4, *Bureau of National Affairs* did not invoke FOIA exemption six. Nothing in the opinion refers to exemption six, and the court's discussion focused exclusively

on whether the requested materials met the definition of agency records under FOIA. The court stated that the issue before it was "whether a document created by an agency employee is an 'agency record' within the meaning of FOIA," 742 F.2d at 1493 (emphasis omitted), and after analyzing the materials at issue, it "h[e]ld that, with the exception of the daily agendas that were distributed within the Antitrust Division, the appointment materials requested . . . [were] not 'agency records' within the meaning of FOIA," *id.* at 1496.

As to the dissent's second point, *Goland*, *Holy Spirit*, and *Paisley* did not subdivide the documents for a very good reason: the issue was not presented. In all three cases, the only question was whether the documents were agency records in their entirety. Here, by contrast, because Congress manifested its intent with respect to at most only part of the IRS response, neither Congress nor the agency has exclusive control over the document. By directing the district court to consider whether those portions of the IRS response that would reveal the Joint Committee request can be redacted, we recognize that the principle set forth in *Paisley*—that an agency-created document can become a congressional record—applies as well to *portions* of an agency-created document. We thus remain true to a definition of agency records that excludes congressional material, *see Goland*, 607 F.2d at 346, but includes materials created and possessed by an agency "in the legitimate conduct of its official duties," *Tax Analysts*, 492 U.S. at 145. Any other result could create a huge hole in FOIA. For example, suppose on remand the district court discovers that the seventeen-page letter contains only a few references to the Joint Committee request, that those references can be easily redacted, and that the three attachments can be disclosed in their entirety. To withhold such material from disclosure just because the letter contains a few redactable references to the Joint Committee would, contrary to the principles underlying FOIA, deny the public access to potentially valuable information about "whether the IRS's selection of tax-exempt organizations . . . for audit has been politically motivated," Paull Decl. ¶ 7.

Finally, the dissent maintains that under our approach United We Stand America will still not receive the information it seeks. *See* Dissent at 6–7. But United We Stand America does not seek disclosure of materials that would reveal the Joint Committee request. It seeks "any and all documents . . . that refer or relate in any way to the organization." If the district court determines that references to the Joint Committee request can be redacted (and assuming that none of FOIA's exemptions applies) then United We Stand America will get much or even all of the information it seeks.

### III.

In finding sufficient "indicia of congressional intent," *Paisley*, 712 F.2d at 696, to control the April 28 request and the portions of the response that would reveal that request, we emphasize that (1) the confidentiality directive appears in a letter written by the Joint Committee's chief of staff as part of an investigation authorized by the chairman, vice-chairman, and ranking members of the Joint Committee, and (2) the IRS Manual, relied on by the Joint Committee, expressly recognizes the confidentiality of Joint Committee requests. We express no view about the sufficiency of congressional manifestations of intent to control documents that are created under other circumstances.

The judgment of the district court is affirmed as to those portions of the IRS response that would reveal the Joint Committee request. The case is remanded with instructions to determine whether the IRS response can be redacted to protect the confidentiality of the Joint Committee's April 28 request and, if so, to order the IRS to release any segregable portions that are not otherwise protected by one of FOIA's nine exemptions, *see* 5 U.S.C. § 552(b).

*So ordered.*

1

HENDERSON, *Circuit Judge*, dissenting:

I believe the district court correctly analyzed the four factors set forth in *Tax Analysts* to conclude that the IRS does not have sufficient "control" of its copy of its response to the Joint Committee on Taxation (JCT)'s request to make the document[1] disclosable as an "agency record" under FOIA. *Tax Analysts v. United States Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd on other grounds*, 492 U.S. 136 (1989). To reach a different conclusion, the majority rejects our four-factor test for agency control, applies, but reinterprets, one of those factors and disturbs our long-settled FOIA analysis. I therefore respectfully dissent.

Relying on our decisions in *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838 (D.C. Cir. 1981), and *Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983), the majority concludes that, if the document sought under FOIA is created by the agency in response to a congressional request, whether it is an agency record depends *solely* on whether "*Congress* has manifested a clear intent to control the document." Maj. Op. at 2 (emphasis added). But we have established a four-factor test for determining "whether *an agency* exercises sufficient control over a document to render it an 'agency record'," *Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (emphasis added), which test is not superseded by, or rendered inapplicable to, documents that respond to a congressional request. The majority nonetheless contends that its approach is consistent

---

[1] The document in its entirety consists of a seventeen-page letter from the IRS Director, Exempt Organizations, to the JCT chief of staff, that includes "a status report on case files and other information requested by the [JCT]," along with three attachments, described in part as a "list of organizations and the names of IRS employees who were involved in cases concerning those organizations" (Exhibit 1), a "narrative listing of cases containing allegations of inappropriate behavior by IRS employees involving tax-exempt organizations" (Exhibit 2), and a "list of National Office cases in which the volume of documents in each case is estimated" (Exhibit 3). Joint Appendix (JA) 27–28.

with *Tax Analysts*'s second factor ("the ability of the agency to use and dispose of the record as it sees fit," 845 F.2d at 1069) and other circuit precedent. *See* Maj. Op. at 7–8, 11–12. As we explained in *Paisley*, however, "*the agency* to whom the FOIA request is directed must have *exclusive* control over the disputed document[ ]" in order for it to be an "agency record" subject to FOIA. 712 F.2d at 693 (emphasis added); *see also Goland*, 607 F.2d at 347 (deciding whether Congress-generated document had "become property subject to the *free disposition* of the agency with which the document resides" (emphasis added)). Even the majority acknowledges that *the agency* lacks such "exclusive" control over the document and that the *entire* document is not subject to the IRS's "free disposition" inasmuch as it sanctions the nondisclosure of any portion that reveals the JCT's request. For me, the JCT's request for confidentiality by itself tilts the second *Tax Analysts* factor in the IRS's favor although there is additional record evidence – e.g., the IRS's FOIA Manual, its course of dealing with the JCT and the JCT chief of staff's declaration – that the IRS lacks sufficient control (and, without a doubt, exclusive control) over its copy of the response to render it an agency record.

Furthermore, we have previously required that "all four factors be present" before we conclude that "an agency has sufficient 'control' over a document to make it an 'agency record.'" *Tax Analysts*, 845 F.2d at 1069 (emphasis added). The majority, relying on one sentence from *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989) – a case which has nothing to do with an agency's copy of a document created solely in response to a confidential request by a congressional committee, the original of which the agency delivered to the committee, which original the committee retains, has not publicly disclosed and to whose disclosure the committee has objected, and continues to object, because disclosure will reveal the substance of the JCT's confidential request – concludes that the other three factors for determining agency control are superfluous if "the agency creates and possesses the document in the legitimate conduct of its official duties." Maj. Op. at 12. But the other three factors lead ineluctably to the conclusion that the document in its entirety is not an "agency record." With regard to the

"intent of the document's creator to retain or relinquish control over the records" (not surprisingly, the first factor), *Tax Analysts*, 845 F.2d at 1069, it is undisputed that the IRS created the document for the sole purpose of responding to the JCT's confidential request (which it did by forwarding the original to the JCT) and maintains only a copy. *Cf. Holy Spirit*, 636 F.2d at 843 (agency-created documents could become "congressional documents because generated in response to congressional inquiries and transferred to Congress" but not if the Congress "failed to retain control over them").[2]   The third factor considers the "extent to which agency personnel have read or relied upon the document." *Tax Analysts*, 845 F.2d at 1069.   The IRS has not used its copy of the response for any agency purpose, let alone a policy-making one.   *See Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (data tapes agency records because *inter alia* agency "read and relied significantly on the information in writing articles and developing agency policies"); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 157 (1980) (Kissinger's notes not agency records because *inter alia* "they were not used by the [State] Department for any purpose"); *Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994) (" '[I]n cases where documents are created by an agency employee and located within the agency, *use of the document becomes more important in determining the status of the document under FOIA.*' " (quoting *Bureau of Nat'l Af-*

---

[2] The majority's discussion of *Goland*, *Holy Spirit* and *Paisley* glosses over the portions of those decisions that emphasize the importance of "the circumstances surrounding the creation of the documents."   *Paisley*, 712 F.2d at 694; *see Holy Spirit*, 636 F.2d 842–43 ("[T]here is *no evidence* surrounding the generation of these CIA-created records indicating that Congress intended that they remain secret." (emphasis added)); *Goland,* 607 F.2d at 347 (concluding document was not "agency record" based "both on the circumstances attending the document's generation and the conditions attached to its possession").   Here, those circumstances – the IRS created the document in response to the JCT's confidential request and not for any independent agency purpose – plainly indicate that the IRS's copy of its response is not an agency record.

*fairs, Inc. v. United States Dep't of Justice*, 742 F.2d 1484, 1490 (D.C. Cir. 1984))) (internal ellipsis omitted; emphasis in original). The fourth factor looks to the "degree to which the document was integrated into the agency's record system or files." *Tax Analysts*, 845 F.2d at 1069. The IRS keeps its copy in a segregated file devoted solely to IRS correspondence with the JCT. *See Kissinger*, 445 U.S. at 157 (Kissinger's notes not agency records because *inter alia* "[t]hey never entered the State Department's files"). The record before us does not reflect why the IRS retains a copy of the response, but the fact that it has not used that copy and keeps it segregated reinforces the conclusion that the document was not created for the agency's use. FOIA does not require disclosure simply because the IRS practices what it preaches – *i.e.*, it keeps a copy. *See Kissinger*, 445 U.S. at 157 ("We simply decline to hold that the physical location of the notes . . . renders them 'agency records.' ").[3]

The most serious problem with my colleagues' holding is that it rewrites FOIA law. The question presented in *Goland*, *Holy Spirit* and *Paisley* was whether the documents at issue were "congressional" or "agency" records. *Goland*, 607 F.2d at 344–45; *Holy Spirit*, 636 F.2d at 840; *Paisley*, 712 F.2d at 692; *see* 5 U.S.C. § 551(1)(A) ("agency" does not include Congress); *see generally Wolfe v. Dep't of Health & Human Servs.*, 711 F.2d 1077, 1079 (D.C. Cir. 1983) ("A threshold inquiry in any FOIA case is whether the documents requested are in fact 'agency records.' ") In answering that question we did not subdivide any document into part-congressional record and part-agency record. Yet this is precisely what the majority tells the district court to do. *See* Maj. Op. at 12 (concluding "that only those portions of the response that would reveal the Joint Committee request are

---

[3] The majority worries that application of our traditional four-factor test for agency control would keep secret all documents that "would not have been created but for [a] congressional request, that the agency relies on . . . for no other purpose, and that . . . are kept in separate files." Maj. Op. at 12. It omits mention of the attribute that even *it* requires in order to keep a document (or at least parts thereof) secret, namely congressional intent to do so.

congressional documents not subject to FOIA"). There is only one way to "subdivide" under FOIA, however, and that is by first determining that the entire document is an "agency record" and then analyzing whether any portion of that agency record is nonetheless protected from disclosure by one of the nine statutory exemptions listed in 5 U.S.C. § 552(b). *See id.* ("Any reasonably segregable portion of a[n agency] record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection [listing exemptions].");  *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51 (1989) ("An agency must disclose agency records to any person under [5 U.S.C.] § 552(a), 'unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b).'" (quoting *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988))). The process of redaction, however, does not change the redacted portion into a non-agency record; it simply makes that portion of the agency record not subject to disclosure. *Id.*; *see Bureau of Nat'l Affairs*, 742 F.2d at 1496 ("The inclusion of personal information does not, by itself, take material outside the ambit of FOIA, for personal information can be redacted from the copies of documents disclosed to a FOIA requester.")[4] What

---

[4] The majority cites *Bureau of National Affairs*, 742 F.2d at 1496, to support "releasing a redacted version of the response" and "justify withholding as congressional materials solely those portions of the [response] that would disclose the [JCT] request." Maj. Op. at 9. Let's be clear: the court in *BNA* nowhere endorses the notion – as the majority does here – that *portions* of a document can be cut out to allow the court to conclude that the remainder is an "agency record" and therefore subject to FOIA and its exemptions. (Indeed, *BNA* tells us to "focus on the totality of the circumstances surrounding the creation, maintenance, and use of the document to determine whether the document is [or is not] in fact an 'agency record.'" 742 F.2d at 1492–93.) Nor does *BNA* support the notion – as the majority does here – that portions can be redacted from an "agency record" by some means other than by one of FOIA's nine exemptions.

the majority does, in effect, is to carve out a tenth exemption, *i.e.*, "justify withholding . . . those portions of the [IRS response] that would disclose the [JCT's] request." Maj. Op. at 9. It does so, I believe, by confusing redaction based on a FOIA exemption, 5 U.S.C. § 552(b), with nondisclosure due to FOIA's inapplicability (*i.e.*, a non-agency record). *See* 5 U.S.C. § 551(1)(A); Maj. Op. at 2 ("The Freedom of Information Act does not cover congressional documents."). To my knowledge, we have never said that the same document can be part agency record and part non-agency record. *See Bureau of Nat'l Affairs*, 742 F.2d at 1494 ("The term 'agency records' should not be manipulated to avoid the basic structure of . . . FOIA: records are presumptively disclosable unless the government can show that one of the enumerated exemptions applies."). And for good reason – to do so the court would have to redefine "agency record" or, perhaps, the Congress add a tenth exemption to 5 U.S.C. § 552(b).

Of course, by allowing the IRS to keep the substance of the JCT request confidential – and there being nothing in the record to suggest that the IRS response goes beyond the scope of the JCT's request[5] – the majority necessarily concludes that the IRS must disclose only *non*-responsive infor-

———

That the majority looks to *BNA* and *BNA* alone to support redacting the document at issue speaks volumes because *BNA*'s redaction language is fully consistent with our traditional FOIA analysis. In *BNA*, the court considered whether certain appointment materials were agency records under FOIA. The court rejected the idea that the inclusion of personal information in the appointment materials was dispositive because "personal information *can be redacted* from the copies of documents disclosed to a FOIA requester." *Id.* at 1496 (emphasis added). To be sure, the court did not explain why "personal information can be redacted" but the reason is obvious: FOIA expressly provides for the redaction of personal information from agency records. 5 U.S.C. § 552(b)(6) (authorizing redaction of information that "would constitute a clearly unwarranted invasion of personal privacy" from agency record ); *see, e.g., United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599–602 (1982).

[5] *See supra* n.1.

mation. United We Stand America will therefore receive only that information neither the JCT nor it ever requested.